## PITTS v. LIGHTHALL et al.

*(Supreme Court, General Term, Third Department.* November 30, 1891.)

FRAUDULENT CONVEYANCES—RIGHTS OF CREDITORS—EVIDENCE.

    P., while insolvent, bought phosphate to the value of $616 from defendants, and executed his note for the same, and afterwards obtained a renewal thereof at 90 days. P.'s farm was incumbered by two mortgages, the first to M. and the other to his (P.'s) sister-in-law. With the view of placing the phosphate beyond defendant's reach, P. made a note to M. for $262.32, of which $228.22 was for the interterest, and $34 of which was part of the principal of the M. mortgage, which note P. procured his two sons to sign, one of whom was plaintiff, and then delivered the note to M. Next day plaintiff and brother took up this note to M. with their own note, and the father then transferred the phosphate to them as security. Plaintiff deposited the phosphate with M., who gave no credit on the mortgage for plaintiff's note, and intended none, except as he should receive proceeds from sales of the phosphate. Defendants recovered judgment against P., and levied on the phosphate, which was claimed by P.'s sons. *Held*, in an action against defendants as indemnitors of the sheriff, that the acts of P. and sons and M. were done with intent to hinder and delay defendants in the collection of their debt, and that a verdict for plaintiff should be set aside.

Appeal from circuit court, Rensselaer county.

Action by Andrew F. Pitts against William S. Lighthall and John A. Lighthall. From a judgment for plaintiff, and from an order denying a motion for a new trial, made on the minutes of the judge, defendants appeal. Reversed.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*B. W. Strycker*, (*R. A. Parmenter*, of counsel,) for appellants. *Merritt & Ryan*, (*Henry A. Merritt*, of counsel,) for respondent.

LANDON, J. The question upon the trial was whether the phosphate seized by the sheriff under an execution against John W. Pitts was his property or that of the plaintiff and his brother. John W. Pitts had owned the phosphate, and he transferred it to the plaintiff and his brother. The defendants allege that the transfer was fraudulent and void, because made to defraud the creditors of John W. Pitts. The case was fairly submitted to the jury by the learned county judge. The question of fraud was for the jury. Nevertheless we think the verdict for the plaintiff is "contrary to the evidence." In March, 1889, John W. Pitts owed the defendants, who were dealers in

phosphate at Syracuse, about $616 for phosphate which he had bought of them. He had the phosphate stored at the railroad depot in Berlin, Rensselaer county. The defendants held his notes for the amount. The notes were coming due about March 18, 1889. John W. Pitts had been dealing in phosphate about seven years. He was insolvent. Knowing his insolvency, he asked the defendants to accept a renewal of his notes for 90 days, and they did so. He owned a farm of 196 acres in Nassau, Rensselaer county, upon which he resided with his wife, daughter, and son David. He had horses, cows, and the personal property usual upon such a farm. His farm was incumbered by two mortgages,—one for $1,834, on which there was due about $194 for interest April 1, 1889. This was held by Roger W. Morey. A second mortgage was held by Mrs. Socrates Pitts, his wife's step-mother, who was also his sister-in-law. He owed various unsecured debts to his relatives. He conceived the idea of so disposing of his personal property, including the phosphate, as to prevent the defendants from applying any of it upon the debt he owed them. His first step in this direction was the renewal of the notes they held. The next was to dispose of the phosphate. He explained his condition to his family, including the plaintiff and his son David. They knew his embarrassment, and consented to assist him. He drew up and signed a note, dated April 1, 1889, payable to Roger W. Morey, for $228.22, being for the interest and $34 of the principal upon the mortgage held by Morey. He requested the plaintiff and David to sign the note, and they did so. He delivered the note on the same day to Morey. On the next day the plaintiff and David made their own note, payable to Morey, for the same amount, and delivered it to Morey, who thereupon surrendered to plaintiff the note of the day before. Thus plaintiff and David by their note took up their father's note, upon which they were sureties, and apparently made their father debtor to them for the amount. Then their father, in order to pay them the debt thus created, transferred to them the phosphate which he had stored at the depot, and gave to David an order on the depot master to deliver it to him. Davis drew it away, and stored most of it with Morey, the purpose being to sell it, and pay the note to Morey from the proceeds. Morey did not indorse the amount of the note upon the mortgage, and there is no evidence that he intended to, except as he received payment upon it. The sheriff afterwards seized most of the phosphate, and sold it upon defendants' execution against John W. Pitts. David assigned his interest in it to plaintiff. John W. Pitts, between April 4 and 16, 1889, confessed judgment in favor of his relatives and others to the amount of about $1,900, and afterwards in favor of the defendants. He disposed of his personal property not exempt from execution. The second mortgage upon the farm has since been foreclosed, but John W. Pitts and his family are still residing upon it, David being the ostensible proprietor. By applying the phosphate upon the first mortgage, the liens held by John W. Pitts' relatives upon the farm would all be strengthened, and the danger of his being removed from the farm lessened. These facts all appear from the testimony of plaintiff's witnesses. It is plain that the debt from John W. Pitts to his sons, the plaintiff and David, was created for the purpose of enabling John W. Pitts so to dispose of the phosphate as to hinder and delay the defendants in the collection of their just demands. While it is true that a failing debtor has the right in good faith to sell his property in payment of any creditor whom he prefers, in this case the plaintiff and David did not in fact become his creditors by the transaction recited. They advanced him no money, and really did nothing whereby the mortgage debt was then diminished. It was not intended that it should be diminished, except from the proceeds of the phosphate. The notes and the sale of the phosphate were a mere cover to enable John W. Pitts to keep off his creditors until he should be able, by the help of Morey and the plaintiff and David, to turn the phosphate into money, and apply so much of it upon the mortgage as the note

called for.   The learned counsel for the plaintiff urges that the transaction was in the nature of a mortgage, and contends that, if John W. Pitts had mortgaged the phosphate to Morey to secure his own note given April 1, 1889, the mortgage would have been upheld.   Possibly so, but in that case Morey would have held two securities for one debt, and the defendants, with their levy upon the phosphate, could have compelled Morey, by a tender to him of the money due upon the real-estate mortgage, either to assign it to defendants or release his lien upon the phosphate.   The scheme here devised was to split the mortgage debt, which was amply secured, transfer part of it to the plaintiff and his brother, and transfer the phosphate to them as security for it.   To have mortgaged the phosphate to Morey would have been to give him a security he did not want and could not keep.   But by splitting the mortgage debt, and transferring part of it to apparent creditors created for the purpose of receiving it, a place was invented where the phosphate would apparently be free from the danger attaching to excessive securities in the hands of a single creditor.   Such a transaction should not be protected.   To say it was done in good faith is a travesty upon truth.   We cannot render any verdict, but we think we ought, in our discretion, to set this verdict aside as an obvious miscarriage of justice.   Judgment reversed, and new trial granted, costs to abide the event.   All concur.